IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TAMI LYNN FIRESTONE, | ) | CASE NO. 1:24-CV-01389-JDG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE JONATHAN D. GREENBERG |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **MEMORANDUM OF OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff, Tami Lynn Firestone ("Plaintiff" or "Firestone"), challenges the final decision of Defendant, Frank Bisignano,[1] Commissioner of Social Security ("Commissioner"), denying her application Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and the consent of the parties, pursuant to 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. PROCEDURAL HISTORY

On November 5, 2021, Firestone filed an application for SSI alleging a disability onset date of October 1, 2015 and claiming she was disabled due to hypertension, kidney disease, blood clots, anxiety, high blood pressure, and high cholesterol. (Transcript ("Tr.") at 97, 207.) The applications were denied initially and upon reconsideration, and Firestone requested a hearing before an administrative law judge ("ALJ"). (Tr. 211-12, 219, 242-43.)

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security.

On June 26, 2023, an ALJ held a hearing, during which Firestone, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 110-129.) On August 1, 2023, the ALJ issued a written decision finding Plaintiff was not disabled. (*Id*. at 97-109.) The ALJ's decision became final on June 11, 2024, when the Appeals Council declined further review. (*Id*. at 1.)

On August 13, 2024, Firestone filed her Complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 7, 9, 10.) Firestone asserts the following assignments of error:

(1) Whether the ALJ's assessment of Plaintiff's physical symptom allegations complied with the requirements of SSR 16-3p.

(2) Whether the ALJ's evaluation of NP Williams's medical opinion was supported by substantial evidence.

(Doc. No. 7 at 8.)

## II. EVIDENCE

### A. Personal and Vocational Evidence

Firestone was born in 1965 and was 58 years-old at the time of her administrative hearing (Tr. 207, 116), making her a "person of advanced age" under Social Security regulations. *See* 20 C.F.R. §§ 404.1563(e), 416.963(e). She has a high school education. (Tr. 117.) She has no past relevant work. (*Id*. at 127.) She previously worked as a retail cashier/stocker. (*Id*.)

### B. Relevant Medical Evidence[2]

On April 30, 2021, Firestone presented for blood work. (Tr. 411-18.) Abnormal results included high creatinine, low creatinine clearance, high blood urea nitrogen ("BUN"), low CO2, high anion gap, high phosphorus, and high uric acid. (*Id*.) Her estimate glomerular rate ("eGFR"), a test to show how well kidneys are filtering blood, was low. (*Id*.)

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

On August 3, 2021, Firestone presented for blood work. (*Id*. at 420-27.) Abnormal results included high BUN, high creatinine, low eGFR at 30 percent, high chloride, low CO2, high anion gap, and high uric acid. (*Id*.)

On September 5, 2021, Firestone presented to the emergency department with complaints of cramping in her left calf. (*Id*. at 464.) She was pain-free on admission, but reported the pain at a five out of ten at its worst. (*Id*.) A physical examination revealed no acute distress, normal cardiovascular and pulmonary functioning, tenderness in the left calf, normal musculoskeletal range of motion, normal range of motion in her neck, no swelling in her legs, and no neurological defects. (*Id*. at 465-66.) A scan of her left leg revealed posterior tibial deep vein thrombosis ("DVT"). (*Id*. at 471.)

On September 5, 2021, Firestone presented for blood work. (*Id*. at 428-29.) Abnormal results included high BUN, high creatinine, low eGFR at 19 percent, low sodium, and low CO2. (*Id*.)

On September 14, 2021, Firestone saw Tricia Williams, NP-C, for a follow up to her emergency department visit. (*Id*. at 476.) Her diagnoses were "chronic kidney disease, stage 3, related to hypertensive arteriolonephrosclerosis and solitary functioning right kidney" and "hyperlipidemia". (*Id*.) Her eGFR was 36 percent. (*Id*.) Her chronic kidney disease was "stable". (*Id*. at 477.) She was advised to return in two months for her regularly scheduled renal assessment. (*Id*.)

On October 25, 2021, Firestone presented for blood work. (*Id*. at 443-44.) Abnormal results included high BUN, high creatinine, and low eGFR at 25 percent, and low albumin. (*Id*. at 443, 451.)

On November 3, 2021, Firestone saw Tricia Williams, NP-C, for a follow up visit. (*Id*. at 474.) Her diagnoses were the same as her September appointment. (*Id*.) Williams noted she saw her as a follow up to an ER visit in September due to a blood clot and was currently not experiencing any problems. (*Id*.) She noted a history of high cholesterol that was currently under control. (*Id*.) Her physical examination was normal except for some wheezing. (*Id*.) Her eGFR was 36 percent. (*Id*.) Williams noted her kidney disease

was "stable on Lisinopril", her blood pressure was under control, and she recommended a follow up in three months. (*Id*. at 475.)

On January 24, 2022, Firestone presented for blood work. (*Id*. at 461.) Abnormal results included high BUN, high creatinine, low eGFR at 34 percent, high chloride, and low CO2. (*Id*.)

On February 24, 2022, Firestone had a follow up visit with Tricia Williams for Stage 3(b) chronic kidney disease. (*Id*. at 731.) "Her only complaint [was] lower leg muscle ache and pain." (*Id*.) Her physical examination was normal. (*Id*. at 732-33.) She was advised to continue on her medications and follow up in three months. (*Id*. at 732.)

On May 16, 2022, Firestone presented for blood work. (*Id*. at 560.) Abnormal results included high BUN, high creatinine, low eGFR at 29 percent, and high cholesterol. (*Id*. at 560, 562.)

On May 24, 2022, Firestone had a follow up visit with Tricia Williams for Stage 3(b) chronic kidney disease. (*Id*. at 576.) Firestone had complained of muscle aches and pains at her last visit, so she was taken off her statin medication, but now needed to go back on it due to blood work reporting high cholesterol. (*Id*.) She was advised to continue her medications, avoid excessive sodium and nephrotoxic agents, stay well hydrated, and to avoid nonsteroidal medication and contrast dye. (*Id*.)

On July 25, 2022, Firestone presented for blood work. (*Id*. at 638.) Abnormal results included high BUN, high creatinine, low eGFR at 26 percent, high chloride, and high cholesterol. (*Id*. at 638-40.)

On November 2, 2022, Firestone had an ultrasound of her right leg. (*Id*. at 805.) The imaging was negative for DVT. (*Id*. at 807-08.)

On November 3, 2022, Firestone had a follow up visit with Tricia Williams for Stage 3(b) chronic kidney disease. (*Id*. at 626, 896.) Her eGFR was 30. (*Id*. at 696, 897.) She complained of muscle pain in her thighs. (*Id*. at 897.) Her blood pressure and anxiety were well controlled. (*Id*. at 896-97.) She was

advised to continue her current medications, avoid excessive sodium intake and nephrotoxic agents, stay well-hydrated, avoid NSAIDs, and follow up in three months. (*Id*. at 897.)

On February 2, 2023, Firestone had a follow up visit with Tricia Williams for Stage 3(b) Chronic Kidney Disease. (*Id*. at 681.) Firestone reported continued "muscle pain" in her thighs and worsening anxiety. (*Id*.) She did not follow up with a vascular physician since her last visit. (*Id*.) She denied shortness of breath, urinary symptoms, nausea, or vomiting. (*Id*.) Her eGFR was 37. (*Id*.) Her physical examination was normal. (*Id*. at 683.) Williams provided another referral to a vascular physician, a phone number for a counselor, and phone number for "Job and Family Resources" to "help assist with any needs." (*Id*. at 681) She was advised to continue medications, avoid excessive sodium intake, and return in three months. (*Id*.)

On April 25, 2023, Firestone presented for blood work. (*Id*. at 915.) Abnormal results included high BUN, high creatinine, and low eGFR. (*Id*.)

On May 3, 2023, Firestone had a follow up visit with Tricia Williams for Stage 3(b) Chronic Kidney Disease. (*Id*. at 889.) She reported continued "muscle pain" in her thighs. (*Id*.) She did not follow up with a vascular physician since her last visit. (*Id*.) She reported worsening anxiety. (*Id*.) Her eGFR was 30. (*Id*.) Her physical examination was normal. (*Id*. at 891.) Williams provided another referral to a vascular physician, a phone number for a counselor, and phone number for "Job and Family Resources" to "help assist with any needs." (*Id*.) She was advised to return in three months. (*Id*. at 889.)

**C. State Agency Reports**

**1. Mental Impairments**

On March 24, 2022, David Biscardi, Ph.D., reviewed the file and opined "[t]here are no mental medically determinable impairments established." (*Id*. at 209.)

On October 10, 2022, on reconsideration, Karla Delcour, Ph.D., affirmed Dr. Biscardi's findings. (*Id*. at 216.)

**2. Physical Impairments**

On March 17, 2022, Leon Hughes, M.D., reviewed the file and opined Firestone had no exertional limitations and could perform work at all exertional levels. (*Id*. at 210.) He expressly considered Firestone's symptoms of pain and fatigue. (*Id*.) He found Firestone should be limited to occasionally crawling and climbing ramps or stairs, and occasionally climbing ladders, ropes and scaffolds. (*Id*. at 211.)

On July 9, 2022, on reconsideration, W. Scott Bolz, M.D., affirmed Dr. Hughes' findings. (*Id*. at 218.)

**D. Hearing Testimony**

During the June 26, 2023 hearing, Firestone testified to the following:

- She is on medication for blood clots in her legs. (*Id*. at 118.) The medication causes fatigue. (*Id*. at 122.) She usually takes two naps per day, lasting an hour or two. (*Id*.) The medication she is on causes dizziness, fatigue, and soreness in her legs. (*Id*. at 125.)

- She takes blood pressure pills to help her kidney function. (*Id*. at 121.) She has only one functioning kidney, and it is functioning at about thirty percent. (*Id*. at 123-24.) She has her blood work done every two months and sees her kidney doctor every three months. (*Id*. at 124.) She feels nervous when she goes in for her appointments. (*Id*.) If her kidney function falls into "20-something percent" she may have to do dialysis. (*Id*.)

- She has back pain due to her kidney problems. (*Id*. at 121.) She experiences pain in her back, legs, and hands. (*Id*. at 122.) She experiences a "squeezing pain, sharp back stabs, like my legs hurt, feet, tingling on my right hand and arm." (*Id*. at 124.) She sometimes takes Tylenol for the pain, and wears compression socks on her legs. (*Id*. at 122-23.) She can sit for about a half hour and then she must get up and walk around the house for about ten minutes. (*Id*. at 123.) After she is on her feet for ten minutes she starts getting cramps and puts her "leg compressions" on. (*Id*.)

- She went to the emergency department to have her heart shocked. (*Id*. at 118.) The providers at the emergency department thought her heart issues were due to anxiety. (*Id*.) She has had anxiety since she was a child and it has gotten worse as she has gotten older. (*Id*.) She takes medication for anxiety. (*Id*. at 119.) The medication helps if she takes two of the pills, but not if she takes only one. (*Id*.) Her anxiety is caused by the

stress of everyday problems and losing her mother. (*Id.*) She experiences panic attacks, where she has chest pain, cold clammy sweats, and is trying to catch her breath. (*Id.* at 125.) This occurs every day if she doesn't take her medication. (*Id.*) She plans to see a provider to treat depression. (*Id.* at 120.)

- She tries to do chores around the house but can't do them anymore. (*Id.* at 119.) Her hobbies include doing puzzles, reading books, and watching TV. (*Id.* at 120.) She sometimes goes to the grocery store, but it is hard for her to walk and function. (*Id.*) One time at the grocery store someone was staring at her and she said, "what are you looking at". (*Id.* at 125.) She does not want to be bothered or run into anybody. (*Id.*)

The VE testified Firestone had no past relevant work. (*Id.* at 127.) The ALJ asked the VE to classify Firestone's prior job at a Goodwill store. (*Id.*) The VE classified the job as a "retail cashier/stocker, light, SVP 3, DOT 290.477-014." (*Id.*) The ALJ then posed the following hypothetical question, "[p]lease assume a hypothetical individual the same age and education as the claimant, the past job that you described, who could perform work at the medium exertional level with occasional climbing and crawling, could this individual perform the claimant's past work?" (*Id.*)

The VE testified the hypothetical individual would be able to perform Firestone's past work as a retail cashier/stocker. (*Id.* at 127.) The VE further testified the hypothetical individual would also be able to perform other representative jobs in the economy, such as order puller, hand packager, and laundry laborer. (*Id.* at 128.) The attorney for Firestone asked if someone required a ten-minute break every thirty minutes to walk around, if that would allow for any type of job. (*Id.* at 128-29.) The VE responded that it would not. (*Id.* at 129.)

## III. STANDARD FOR DISABILITY

A disabled claimant may be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100, 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594

F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that they are not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that they suffer from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c), 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent the claimant from doing their past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent the claimant from doing their past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since November 5, 2021, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: chronic kidney disease, deep vein thrombosis, anemia, hyperlipidemia, and hypertension (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in

      20 CFR 416.967(c) with the following additional limitations: occasional climbing and crawling.

5. The claimant is capable of performing past relevant work as a retail cashier/stocker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since November 5, 2021, the date the application was filed (20 CFR 416.920(f)).

(Tr. 99-105.)

## V. STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec*., 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs*., 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d

535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

### A. Symptom Evaluation

In her first assignment of error, Firestone argues the ALJ's assessment of Firestone's symptom of fatigue did not comply with SSR 16-3p because the ALJ failed to explain why she found Firestone's allegations of fatigue incredible. (Doc. No. 7 at 8.) Firestone claims the ALJ found chronic kidney disease to be a severe impairment and mentioned the allegation of fatigue but failed to provide specific reasons for the weight given to Firestone's fatigue allegations. (*Id*. at 11.)

In response, the Commissioner argues the ALJ "properly evaluated her subjective symptoms". (Doc. No. 9 at 7.) The Commissioner asserts the ALJ considered the relevant evidence and concluded Firestone had some limitations but that her symptoms were not severe enough to preclude all work. (*Id*. at 8.) The Commissioner notes the ALJ acknowledged Firestone's testimony regarding symptoms of fatigue, as well as objective medical evidence devoid of complaints of fatigue or any medication side effects. (*Id*. at 9.) The Commissioner asserts the ALJ's conclusion that Firestone's allegation of fatigue was inconsistent with objective medical evidence was supported by substantial evidence. (*Id*. at 9-10.)

In her reply brief, Firestone argues that the "relevant medical evidence that establishes the severity" of her chronic kidney disease is "contained within lab results and not examination findings." (Doc. No. 10 at 1.) Firestone contends that not including blood work in the RFC was not proper. (*Id*. at 3.)

A two-step process is used to evaluate an individual's symptoms. (20 CFR § 404.1529(c)(3), 416.929(c)(3); *Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Oct. 25, 2017), 2017 WL 5180304.) At step one, the ALJ determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. (*Id*.; SSR 16-3p, 2017 WL 5180304 at *3.) At step two, the ALJ evaluates the intensity, persistence, and limiting effects of the claimant's symptoms. (*Id*. at *4.) "[O]bjective medical

evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms . . . [an ALJ] must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record." (*Id.* at *5.)

An ALJ may consider the following factors when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

(*Id*. at *7-8.) An ALJ is not required to analyze all seven factors. *Pettigrew v. Berryhill*, No. 1:17-CV-01118, 2018 WL 3104229, at *16 (N.D. Ohio June 4, 2018), *report and recommendation adopted,* No. 1:17CV1118, 2018 WL 3093696 (N.D. Ohio June 22, 2018), citing *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

In evaluating complaints of pain or other symptoms, an ALJ may properly consider the credibility of the claimant. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997), citing *Kirk v. Secretary of Health and Human Servs.,* 667 F.2d 524, 538 (6th Cir.1981), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.*, citing *Villarreal v. Secretary of Health and Human Servs.,* 818 F.2d 461, 463 (6th Cir.1987). "Nevertheless, an ALJ's assessment of a claimant's credibility must be

supported by substantial evidence." *Id*. citing *Beavers v. Secretary of Health, Educ. and Welfare,* 577 F.2d 383, 386–87 (6th Cir.1978).

"An ALJ's determination of subjective evidence receives great deference on review." *Jones v. Comm'r of Soc. Sec. Admin.*, No. 1:21-CV-01257-DAC, 2022 WL 3155823, at *16 (N.D. Ohio Aug. 8, 2022), citing *Ulman v. Comm'r of Soc. Sec.,* 693 F.3d 709, 714 (6th Cir. 2012). "Absent compelling reason, this Court may not disturb the ALJ's analysis of the claimant's subjective complaints or the conclusions drawn from them." Id., citing *Baumhower v. Comm'r of Soc. Sec.*, No. 3:18-CV-0098, 2019 WL 1282105, at *2 (N.D. Ohio Mar. 20, 2019). "As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.]" *Ulman*, 693 F.3d at 713-14.

Here, the ALJ analyzed Firestone's symptoms as follows:

> The claimant originally alleged disability due to hypertension, kidney disease, blood clots, anxiety, high blood pressure, and high cholesterol (Exhibit 1E). At the hearing, the claimant indicated that she experiences bloating due to kidney disease. The claimant also alleges that she is not able to drive due to anxiety. She attempts household chores but is too fatigued to complete them. She also alleges difficulty bathing and dressing herself. She is able to shop for groceries at times but has difficulty walking. She also alleges limitations due to pain in the back, legs, and hands. The claimant indicated that her medications cause fatigue, and she naps daily. She can sit for 30 minutes and walk 10 minutes.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the objective evidence of record and other evidence, as defined in 20 CFR 416.929(c)(4). For example, the claimant presented to the emergency department in September 2021 complaining of cramping in her left calf (Exhibit 1F at 64). There was some tenderness on examination and positive Homan's sign, but normal range of motion and no focal deficit (Exhibit 1F at 66). A Duplex scan demonstrated posterior tibial vein deep vein thrombosis (Exhibit 1F at 71). On follow-up, the claimant exhibited no erythema or redness, no pain, and no claudication (Exhibit 2F at 5).

> On follow-up with her nephrologist in February 2022, the claimant reported lower leg muscle ache and pain (Exhibit 10F at 34). They noted a history of deep vein thrombosis requiring anticoagulation. Her physical examination was essentially normal at that time. Follow-up treatment records document essentially unchanged findings (Exhibit 10F at 22 and 30). In November 2022, the claimant denied chest pain and shortness of breath (Exhibit 12F at 11). A deep venous ultrasound of the right leg at that time was negative for deep vein thrombosis (Exhibit 10F at 110).
>
> On follow-up in February 2023, the claimant reported some muscle pain in her thighs; however, she denied shortness of breath, urinary symptoms, nausea, or vomiting (Exhibit 12F at 3). She was continued on her current medications and advised to avoid excessive sodium intake, nephrotoxic agents, nonsteroidal medication and contrast dye, and to stay well-hydrated. Her blood pressure was well-controlled, hyperlipidemia improved, and anemia controlled. The claimant's physical examination was essentially normal at that time. These findings were unchanged on follow-up (Exhibit 12F at 22).

(Tr. 101-102.) The ALJ went on to discuss the medical opinion of Tricia Williams, APRN, CNP and state agency physician Leon Hughes, M.D. (*Id*. at 102.)

The ALJ properly followed the two-step process for evaluating Firestone's symptoms. At step-one, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . ." (*Id*. at 101.) The ALJ ultimately found the "claimant's statement's concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the objective evidence of record and other evidence . . ." (*Id*.) The ALJ considered the objective medical evidence, including diagnoses, examination results, medication effectiveness and lack of adverse side effects. (*Id*. at 101-102.) Moreover, the above quoted portion of the decision reveals that the ALJ discussed several of the seven factors set forth in SSR 16–3p for finding Firestone less than fully credible. (*Id*.) She considered Firestone's testimony, including activities of daily living, the location, duration, frequency, and intensity of her symptoms, medication side effects or lack thereof, and measures to relieve symptoms. (*Id*.)

Firestone contends her allegations of fatigue are substantiated in the form of abnormal blood work results that reflect chronic kidney disease. (Doc. No. 7, at 10.) But "a diagnosis alone does not establish that a condition is disabling, nor does it establish the extent, if any, of the functional limitations caused by the condition." *Baker v. Colvin*, No. 1:15-CV-00910, 2016 WL 4128435, at *13 (N.D. Ohio Aug. 3, 2016); see also *Young v. Sec'y of Health & Hum. Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment).

An ALJ must follow the two-step process for evaluating a claimant's symptoms and as part of that evaluation, an ALJ must consider whether the symptoms are consistent with the objective medical evidence and she did so here. SSR 16-3p, 2017 WL 5180304 at *5. Substantial evidence supports the ALJ's decision. See *Rogers,* 486 F.3d at 241. Given the high level of deference owed to an ALJ's findings with respect to the evaluation of a claimant's alleged symptoms and resulting limitations, under the circumstances presented herein, the court does not find the ALJ's symptom analysis was insufficient.

There is no error.

**B. Opinion Evidence**

In her second assignment of error, Firestone argues "the ALJ's discussion of the required supportability and consistency factors is not supported by substantial evidence." (Doc. No. 7 at 11.) Firestone contends the ALJ never considered the supportability factor when she did not find the opinion of Ms. Williams persuasive. (*Id*. at 13.) Firestone states the ALJ failed to identify an inconsistency between Ms. Williams' opinion and the underlying record because the ALJ cited normal physician findings and well-controlled blood pressure, but Ms. Williams did not base her opinion on these medical symptoms. (*Id*. at 14.)

The Commissioner responds that substantial evidence supports the ALJ's finding that Ms. Williams' opinion was unpersuasive because the ALJ noted that her proposed limitations were not

supported by her own treatment records. (Doc. No. 9 at 5.) The Commissioner notes the ALJ cited essentially normal physical examinations, where Firestone's only complaints were related to muscle pain. (*Id*. at 5-6.) The Commissioner argues the ALJ met the supportability factor when the ALJ cited "nearly every examination conducted by Ms. Williams . . ." and cited examinations where Firestone did not complain of fatigue or lassitude from November 2021 through May 2023. (*Id*. at 6.) The Commissioner asserts the ALJ met the consistency factor when she noted Ms. Williams' opinion was inconsistent with both the medical evidence in the record and the prior administrative medical findings of the state agency physicians. (*Id*. at 6-7.) The Commissioner noted both state agency physicians expressly considered Firestone's fatigue and pain symptoms in setting forth their findings that Firestone could perform work at all exertional levels. (*Id*. at 7.)

In her reply brief, Firestone contends the ALJ's assessment of Ms. Williams' opinion was not supported by substantial evidence because the ALJ did not discuss the basis of Ms. Williams' opinion or the lab results relevant to the opinion, after Step Three. (Doc. No. 10 at 3-4.)

Since Firestone's claim was filed after March 17, 2017, the Social Security Administration's new regulations ("Revised Regulations") for evaluation of medical opinion evidence apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.

Under the Revised Regulations, the Commissioner will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the

factors set forth in the regulations: (1) supportability;[3] (2) consistency;[4] (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(a), (c)(1)-(5). However, supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(b)(2).

The Revised Regulations also changed the articulation required by ALJs in their consideration of medical opinions. The new articulation requirements are as follows:

> (1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.
>
> (2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative

[3] The Revised Regulations explain the "supportability" factor as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[4] The Revised Regulations explain the "consistency" factor as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

> medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.
>
> (3) Equally persuasive medical opinions or prior administrative medical findings about the same issue. When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(1)-(3).

"Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'" *Ryan L.F. v. Comm'r of Soc. Sec.,* No. 6:18-cv-01958-BR, 2019 WL 6468560, at *4 (D. Ore. Dec. 2, 2019) (quoting 20 C.F.R. § 416.920c(a), (b)(1)). A reviewing court "evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Id.*

The ALJ analyzed Ms. Williams' opinion as follows:

> The undersigned has considered the medical opinions of record in rendering this decision. Tricia Williams, APRN, CNP, completed a questionnaire on May 4, 2023 (Exhibit 13F). Ms. Williams concluded that the claimant can work two hours a day, lift five pounds occasionally, and would be absent from work from one to three days a month.
>
> The undersigned does not find the opinions of Ms. Williams persuasive because they are not well supported and are inconsistent with her own treatment records. For example, she documents an essentially normal physical examination on a number of occasions (Exhibit 10F at 22, 30, and

> 34). The claimant also denied chest pain and shortness of breath but reported some muscle pain (Exhibit 12F at 3 and 11). Her blood pressure was well-controlled, hyperlipidemia improved, and anemia controlled. The claimant's physical examination was essentially normal on follow-up (Exhibit 12F at 22).

Supportability and consistency are the most important factors under the new regulations for evaluating medical source opinions. 20 C.F.R. § 404.1520c(a). The ALJ considered the supportability and consistency of Ms. Williams' opinions, discussing how her opinion was both not well supported and inconsistent with her own treatment records. (Tr. 102.) The ALJ cited Ms. Williams' treatment records from November 2021 through May 2023, noting Firestone had "essentially normal physical examination on a number of occasions" and that her physical examination was "essentially normal on follow-up." (*Id.*) The ALJ considered almost every examination by Ms. Williams, and they were consistently unremarkable. (*Id.*) Firestone did not complain of fatigue or low energy during any of these examinations. (*Id.* at 101-102, citing Tr. 474, 731-32, 872, 879-80, 889.)

The ALJ also recognized that Ms. Williams' opinion was inconsistent with the prior administrative medical findings of the state agency physicians. (*Id.* at 102.) The ALJ wrote:

> Leon Hughes, M.D., evaluated the claimant's physical condition based on the evidence of record without examining the claimant on behalf of the DDD on March 17, 2022 (Exhibit 1A). Dr. Hughes concluded that the claimant has no exertional limitations but can occasionally climb ramps/stairs/ladders/ropes/scaffolds and can occasionally crawl. This assessment was affirmed upon reconsideration (Exhibit 3A). The undersigned finds the opinions of the evaluating sources somewhat persuasive as they are somewhat consistent with the objective evidence of record. As noted above, the claimant's physical examinations were essentially normal; however, she reported some muscle pain. The claimant denied shortness of breath and chest pain on follow-up. Her conditions were relatively controlled with regular treatment; however, due to persistent muscle pain, the claimant is limited to medium exertion work with occasional climbing and crawling.

(*Id.*) The ALJ found Ms. Williams' opinion unpersuasive because it was unsupported by her own treatment records and because it was inconsistent with both the medical evidence in the record and the

findings of the state agency physicians. Substantial evidence supports the ALJ's determination. *Rogers*, 486 F.3d at 241.

It is the ALJ's job to weigh the evidence and resolve conflicts, and she did so here. While Firestone would weigh the evidence differently, it is not for the Court to do so on appeal. See *Her*, 203 F.3d at 389-90.

There is no error.

## VII. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED.**

Dated: July 7, 2025

                                              *s/ Jonathan Greenberg*
                                              Jonathan D. Greenberg
                                              United States Magistrate Judge